UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| GABRIEL KLEINPETER and WADE ESTEVE | * | CIVIL ACTION NO: 13-357 |
| | * | JUDGE SHELLEY DICK |
| v. | * | |
| | * | |
| MSGT. TYRONE KILBOURNE; MSGT. JACKSON; SGT. LANDRY; SGT. ANDYELLE; LT. NORTHSWORTHY; and WARDEN STEVE RADAR | * * * | MAGISTRATE JUDGE RICHARD BOURGEOIS |

*****************************************************************

**FIRST AMENDED COMPLAINT FOR DAMAGES**
**TO CORRECT NAMES OF DEFENDANTS**

Now into court, through undersigned counsel, comes **GABRIEL KLEINPETER** and **WADE ESTEVE** for all injuries incurred as a result of the actions of defendants in deliberate indifference to constitutional rights or other causes as follows:

1.

**Jurisdiction**

The jurisdiction of this Honorable Court is invoked Pursuant to 28 USC § 1331 "Federal Question" and accordingly plaintiff specifically seeks relief pursuant to the 28 USC § 1983 for injuries, damages and other losses as well as supplemental jurisdiction pursuant to 28 USC § 1367 over all state law claims. Plaintiff completed the ARP DCI-2012-911 through second step.

2.

**Venue**

Venue is proper pursuant to 28 USC § 1391 (b)(D(2) in that the Plaintiffs and Defendants reside and are located in East Feliciana Parish at the time of the incident and the events or omissions giving rise to the claims herein occurred at DCI which is within this judicial district.

3.

Parties

**PLAINTIFFS:**

**GABRIEL KLEINPETER** is a major who is currently incarcerated at Dixon Correctional Institute, DOC #520898, and who was an inmate at that facility where he was attacked and injured.

**WADE ESTEVE** is a major who is currently incarcerated at Dixon Correctional Institute, DOC # 594705, and who was an inmate at that facility where he was attacked and injured.

**DEFENDANTS:**

**MASTER SERGEANT TYRONE KILBOURNE**, is a major, who was employed by the Dixon Correctional Institute, but who has been terminated, and who now resides at 5501 Hwy 19, Ethel, La 70730, but who during all material times herein was acting within the course and scope of his employment during all material times herein and under the color of State law.

**MSGT KERRICK JACKSON**, is a major, who is employed by the Dixon Correctional Institute and who was acting within the course and scope of his employment during all material times herein and under the color of State law.

**MSGT DAVID LANDRY**, is a major, who is employed by the Dixon Correctional Institute and who was acting within the course and scope of his employment during all material times herein and under the color of State law.

**SGT. BABINGTON ANYAELE**, is a major, who was employed by the Dixon Correctional Institute, but who has been terminated, and who now resides at 10701 Mallie Jefferson Lane, Clinton, Louisiana, but who during all material times herein was acting within the course and scope of his employment during all material times herein and under the color of State law.

**LT. JAMES NORTSWORTHY**, is a major, who was employed by the Dixon Correctional Institute, but who has been terminated, and who now resides at an unknown residence, but who during all material times herein was acting within the course and scope of his employment during all material times herein and under the color of State law.

**WARDEN STEVEN RADAR**, is a major, who is employed by the Dixon Correctional Institute and who was acting within the course and scope of his employment during all material times herein and under the color of State law when he failed to intervene in the repeated and patterned acts of the Defendants violation of the constitutional rights of the inmates housed at DCI.

4.

GENERAL ALLEGATIONS

On October 28, 2012, 2012, the Plaintiffs were doc inmates housed at the DCI in the same cell.

5.

On October 28, 2012, around 2:30 p.m., the Plaintiffs were in a cell when **SGT. ANDYELLE** and a cell block orderly inmate David Benedict came walking up to Plaintiffs' cell and dumped a liquid substance on the floor in front of the cell. The reason this was done is unknown.

6.

On the outside of the chicken wire of their cell **SGT. ANDYELLE** then started hollering for the other guards and told inmate Benedict to hurry up and go get somebody.

7.

At this time, SGT. KILBOURNE, SGT. LANDRY AND SGT JACKSON came running down the tier. **SGT. KILBOURNE** then opened the cell door with

a key and **SGT. KILBOURNE, SGT. LANDRY, SGT. JACKSON and SGT. ANDYELLE** came in the cell and started to attack them.

8.

**SGT. ANDYELLE** was punching Kleinpeter while yelling, "Talk that shit now white boy, you ain't no gangster; you are a ho." While at the same time **SGT. JACKSON** was kicking Kleinpeter in the back of his legs and his buttocks and his private areas. Kleinpeter was kicked in the stomach.

9.

**SGT. KILBOURNE** was holding Kleinpeter down on the floor in his own vomit.

10.

**SGT. LANDRY** and **SGT. KILBOURNE** beat Wade Esteve. Sgt. Kilbourne said, "I'll each you, you nasty mother f'er, you ain't got no cuffs on now what bitch.!" While Plaintiffs were on the floor, SGT. LANDRY held Esteve's hands behind his back to allow **SGT. KILBOURNE** to punch Esteve in his stomach, chest and ribs.

11.

Plaintiffs were heard begging for the beating to stop.

12.

While Esteve and Kleinpeter were on the floor, Defendants cuffed them behind their backs, shackled them and brought him into the hall and made them get on their knees and put their faces on the floor.

13.

When Esteve and Kleinpeter got in the hall **SGT. KILBOURNE** asked **SGT. ANDYELLE** did he activate his beeper and at this time the beeper was activated. **LT. NORTHSWORTHY**, Capt. Allen and Major Moore ran down to the

tier.

14.

Those guards removed Wade Esteve from the tier and spoke to him.

15.

Major Moore brought Kleinpeter into the office and asked him what happened.

16.

Esteve and Kleinpeter were placed in the shower.

17.

As his reason for the beating, Sgt. Andyelle claimed that Esteve and Kleinpeter had slung the liquid substance onto him. SGT. Andyelle had nothing on him, nor did the inside of their chicken wire, also the tray hatch was closed and the cup that had the liquid inside of it was in the hall.

18.

Medical was denied.

19.

These same guards on the same shift beat inmate Thomas Stewart on 10/23/12. Plaintiffs requested that all guards be subjected to a polygraph examination, but none were.

20.

On December 17 and 21, Major Moore and Lt. Northsworthy urged Plaintiff Kleinpeter to dismiss his ARPs, when he refused he was sprayed with chemicals.

21.

Lt. Northsworthy told Kleinpeter that two of his officers got fired meaning Kilbourne and Andyelle and asked him to drop it. **LT.**

**NORTHSWORTHY** threatened retaliation and advised that it would only get worse.

22.

The actions taken by Defendants constitute retaliation against an inmate for excercising legal rights.

23.

On December 21, 2012, Kleinpeter was on CB/B C-Tier in cell #8. **LT. NORTHSWORTHY** advised Kleinpeter he must apologize to **SGT. WHITE**. When Kleinpeter refused, **LT. NORTHSWORTHY** sprayed Kleinpeter with chemical until he complied by apologizing to **SGT. WHITE**.

24.

**SGT. WHITE** state that he had not heard the apology as it was spoken too softly. Acting upon this, **LT. NORTHSWORTHY** again sprayed Kleinpeter until Kleinpeter announced his apology loudly.

25.

Klienpeter was cuffed and brought to the shower. Nurse Wayne saw him and left.

26.

**LT. NORTHSWORTHY** came to the shower and sprayed Kleinpeter again and then turned the fan on and stated "Listen to me Kleinpeter and listen to me good. Let dead horses lie. It could be a lot worse than this. I could strap you down on D-tier on a 4 point suicide watch."

27.

Besides corporal punishment, these acts constitute retaliation for filing an ARP all in violation of constitutional rights.

28.

Numerous inmates were exposed to the chemical once the fans were turned on.

29.

John Pittman was exposed and suffered from the chemicals. Other inmates who were exposed and who made complaints were Clarence Jackson, Ellis Jenkins, Brendon Lands, Lorenzo Porche, Rodney Thompson, D'Andre Washington all of whom filed ARPs.

30.

Defendants are using chemical spray as a form of harassment and corporal punishment of Plaintiffs.

31.

Plaintiffs have repeatedly requested a transfer to another penal institution to get away from the Defendants in fear for their lives.

32.

Warden Radar refused to assist with a transfer and refused to take appropriate action against Defendants to stop the harassment.

33.

Warden Radar is well aware that Kilbourne and Andyelle have a history of repeated brutality and harassment of inmates and use of unnecessary and excessive force, but he has done nothing to protect the constitutional rights of the Plaintiffs.

34.

In the alternative, these guards have similarly attacked other inmates.

35.

In the alternative, where the guards or other guards may have

committed the same acts on other inmates that is unknown at this time, but where same may be shown, or where ratification of the actions of guards may be shown, or violation of or failure to implement any applicable policies or procedures, there may be other persons at fault where same constitutes a deliberate indifference to the constitutional rights of a detainee. All rights are reserved herein to name additional defendants pending discovery.

36.

Warden Radar has never investigated any of the complaints against Kilbourne which demonstrates a callous disregard for the violation of constitutional rights.

37.

Warden Radar had a duty to investigate and the stop any retaliation by his employees of inmates exercising their rights to file an ARP. See Billizone settlement agreement 09-438 (M.D. La.).

38.

Warden Radar was a party to the Billizone settlement and he, thereby, has personal knowledge that harassment and threats to an inmate exercising first amendment rights and the right to file an ARP are prohibited by law and he in agreeing to settle agreed to stop such conduct by his employees.

39.

Warden Radar violated Plaintiffs's constitutional rights by failing/refusing to honor the settlement agreement and by allowing a continuation of such conduct.

40.

La. R.S. 15:829, which allows the Secretary of the Louisiana Department of Public Safety and Corrections to enact rules and regulations

governing inmates and guards, provides that corporal punishment of inmates is forbidden. See also, LAC 22:3309 (B) and see Department Regulation No. c-02-006 (6)(b)(c)(d).

> A. The secretary of the Department of Public safety and Corrections shall prescribe rules and regulations for the maintenance of good order and discipline for inmates sentenced to the legal custody of the department whether housed in local or state facilities, which rules and regulations shall include procedures for dealing with violations thereof. A copy of such rules and regulations shall be furnished each inmate. **Corporal punishment is prohibited.**

41.

Rule 3 of Part I at page 33 of the Corrections Services Employee Manual of the Louisiana Department of Public Safety and Corrections prohibits guards from abusing an offender for any reason by any of the following: verbal abuse; harassment; damaging, destroying, or otherwise abusing an offender's belongings through willful act or gross negligence; and physical abuse.

42.

Retaliating by use of verbal threats and harassment for filing ARPs is unreasonable *per se*.

43.

Additionally, 22 La. ADC Part 1 § 325 (H) addressing the ARP policy provides as follows:

> Policy. All offenders, regardless of their classification, impairment, or disability, shall be entitled to invoke this grievance procedure. It shall be the responsiblity of the warden to provide appropriate assistance for offenders with literacy deficiencies or language barriers. No action shall be taken against an offender for the good faith use of or good faith participation in the procedure. Reprisals of any nature are prohibited. Offenders are entitled to pursue, through the grievance procedure, a complaint that a reappraisal occurred.

44.

Department Regulation No. C-02-006, issued 12/20/10 at page 7, ¶ 10 (B) prohibits the use of mechanical and/or flex cuff restraints as a method punishment; in a way that causes undue physical discomfort, inflicts unnecessary physical pain, or restricts the blood circulation or breathing of the offender; for periods of time longer than justified; or around the head or neck.

45.

The Regulations enacted by the Secretary include Department Regulation No. C-02-006 (12), addressing the use of chemical agents, as follows:

A. **Chemical agents . . . shall not be used as punishment under any circumstances and may be used against an offender** . . . only in the following circumstances:

1) To quell a riot and/or prevent loss of life, serious injury to persons(s) and/or extensive destruction of property;
2) To quell a disturbance that could lead to a serious situation which may jeopardize the safety, security and good order of the institution; or
3) To regain control of the institution or part of it.

B. The use of chemical agents, . . . is considered a use of force. When used, only the minimum amount of force necessary to control the situation shall be used. . . .

C. A determination for corporate or mass use of chemical agents, . . . shall be made by the Warden or designee . . .

D. Chemical agents, . . . shall not:

1) Be used on those offenders who remain passive in their cells without causing a disturbance or becoming hostile **unless the offender continuously defies orders to come to the bars of the cell.** A determination for use under these circumstances, or against an individual offender, **should be made by the highest ranking supervisor on duty in the area where the incident is occurring.**

2) Be used on those offenders who are incapable . . .

3) Whenever possible under prevailing circumstances, **be used against offenders assigned to an area designated as a Mental Health Treatment Unit until a qualified medical or mental health worker is present and has attempted to control the situation** unless it is necessary to prevent loss of life, serious injury to person(s) or extensive property damage. (Large bold added.)

46.

The Constitution, statutes, rules and regulations enacted to protect inmates were disregarded.

47.

Beating an inmate who is in full restraints and begging for mercy is per se unreasonable behavior.

48.

It was unreasonable for Defendant(s) to use force on Plaintiffs when he was not resisting and when he was no longer resisting or attempting to flee or, otherwise, commit any crime.

49.

Use of force was unnecessary and excessive to any need and/or there was no need for use of force under the 4th and 8th Amendments and the circumstances presented.

50.

Whether there was other policy and practice in place at the DCI pertaining to the use of force, which policy was violated and which caused or contributed to the injuries, is unknown at this time.

51.

In the alternative, it was unreasonable to implement, post and follow an ineffective policy and/or fail to follow an effective policy.

52.

One or more of the Defendants acted in a manner that was in wanton or reckless disregard or with malice or willfulness to cause injury and violate constitutional rights.

53.

Violating numerous inmates rights and failure to follow rules and regulations implemented for the protection of inmates constitutes deliberate indifference.

54.

In the alternative, where the guards may have committed the same acts on other inmates is unknown at this time, but where same may be shown, or where ratification of the actions of guards may be shown, or violation of or failure to implement any applicable policies or procedures, there may be other persons at fault where same constitutes a deliberate indifference to the constitutional rights of a detainee, same would evidence a callous indifference and repeated actions warranting punitive damages. All rights are reserved herein to name additional defendants pending discovery.

55.

The following claims for relief are pled collectively and in the alternative.

56.

**FIRST CLAIM FOR RELIEF**

SECTION 1983 VIOLATION OF CIVIL RIGHTS

Plaintiffs seek relief pursuant to 42 U.S.C. § 1983.

Under the color of State and local law, Defendants violated the Plaintiffs 4th, 8th and/or 14th Amendment right to be free from use of

corporal punishment, unnecessary and/or excessive force while being seized and/or detained by the Defendants.

57.

Guards are prohibited by state law from using corporal punishment on prisoners. La. R.S. 15:829.

58.

Use of corporal punishment was prohibited and/or force was unnecessary and/or excessive to any need and/or there was no need for use of force under the 4th or 8th Amendment and the circumstances presented.

59.

The guards violated multiple state laws and rules and regulations.

60.

The conduct of the Defendants was extreme and outrageous.

61.

Defendants acted in a manner that was in wanton or reckless disregard or with malice or willfulness to cause injury and violate constitutional rights.

62.

**SECOND CLAIM FOR RELIEF COSTS AND ATTORNEY FEES**

Plaintiffs seeks relief in the form of attorney's fees and cost pursuant to 42 USC § 1988 and punitive damages pursuant to 28 USC § 1983.

63.

**INJURIES**

The Plaintiffs suffered acute injury and multiple serious and prolonged injury which include but are not limited to his arm, neck, back, shoulder, and face, discomfort, humiliation, pain and suffering, mental and emotional injury, medical and pharmaceutical expenses, and future lost wages.

64.

**REQUEST FOR JURY TRIAL**

Plaintiffs pray for a jury trial on all issues.

Wherefore, Plaintiffs pray that the Defendants be cited to appear and answer and that after resolution of this matter that this Honorable Court enter Judgment in favor of the Plaintiffs against the defendants with legal interest from the date of demand as follows:

a. Physical pain and suffering;

b. Physical injuries;

c. For emotional and mental distress, pain and suffering, humiliation, embarrassment and loss of employment opportunities;

d. Medical, hospital and pharmaceutical bills and services past, present, and future;

e. inconvenience;

f. Future lost wages;

g. All litigation expenses;

h. For attorneys fees and for costs as may be allowable by law; and

j. For such other relief that the Court may deem just, equitable, or proper.

Respectfully submitted:

s/ Donna U. Grodner

Donna U. Grodner (20840)
Blake S. Leger (32251)
GRODNER & ASSOCIATES
2223 Quail Run, B-1
Baton Rouge, Louisiana 70808
(225) 769-1919
FAX (225) 769-1997