UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

GABRIEL KLEINPETER, ET AL.

                                CIVIL ACTION

v.

                                NO. 13-357-JWD-RLB

TYRONE KILBOURNE, ET AL.

## RULING AND ORDER

This matter comes before the Court on Defendants' Motion for Summary Judgment. (Doc. 96.)  Plaintiffs oppose the motion. (Doc. 97.)  Oral argument is not necessary.  Having carefully considered the law, facts in the record, and arguments of the parties, Defendant's motion is granted in part and denied in part.

**I.      Introduction**

The Plaintiffs Gabriel Kleinpeter and Wade Esteve (collectively, "Plaintiffs") are inmates of Dixon Correctional Institute.  Defendants James Norsworthy, Tyrone Kilbourne, David Landry, and Kerrick Jackson ("Defendants") are current and former guards.

Plaintiffs allege two separate instances of Defendants violating their constitutional rights. In short, Plaintiffs first claim that, on October 28, 2012, Defendants entered Plaintiffs' cell and beat them without provocation.[1]  Second, Plaintiffs allege that, in December 2012, Norsworthy sprayed Kleinpeter with chemical agent without justification and in retaliation for filing a grievance.

In their motion, Defendants argue (1) that Plaintiffs have failed to exhaust their administrative remedies against Norsworthy and (2) that all Defendants are entitled to qualified

---

[1] Plaintiffs also claim that Defendant Babington Andyelle participated in the beating, but Andyelle did not join in this motion.

immunity because Plaintiffs cannot prove that any Defendant used excessive force in violation of the Eighth Amendment.

With respect to the qualified immunity, the Court finds that Plaintiffs have demonstrated a genuine issue of material fact as to whether Defendants Kilbourne, Landry, and Jackson subjected Plaintiffs to excessive force on October 28, 2012.  Defendants' motion is thus denied as to these Defendants for this claim.

However, the Court also finds that the Plaintiffs have failed to create an issue of fact that Defendant Norsworthy subjected the Plaintiffs to excessive force on October 28, 2012.  As a result, Norsworthy is entitled to qualified immunity for this claim, and it is dismissed with prejudice.

As to the December 2012 incident, the Court finds that Plaintiffs made no claims against Kilbourne, Landry, and Jackson for this episode, so the Defendants' motion is denied as moot. Further, Plaintiffs provided sufficient summary judgment evidence to create an issue of fact as to whether Norsworthy subjected Kleinpeter to excessive force on this date and retaliated against him for filing a grievance.  As a result, Norsworthy is not entitled to qualified immunity for these claims.

Nevertheless, Defendants have demonstrated that Kleinpeter failed to exhaust his remedies against Norsworthy for the December 2012 occurrence.  Consequently, Defendants' motion on this issue is granted, and this claim is dismissed without prejudice.

Finally, Defendant argues that claims against the Defendants in their official capacity should be dismissed.  The Plaintiff admits that the Defendants were not sued in their official capacity. (Doc. 97 at 1.)  Accordingly, this aspect of the Defendants' motion is denied as moot.

## II.     Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  If the mover bears his burden of showing that there is no genuine issue of fact, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . [T]he nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (internal citations omitted). The non-mover's burden is not satisfied by "conclusory allegations, by unsubstantiated assertions, or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (citations and internal quotations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co.*, 475 U.S. at 587. Further:

> In resolving the motion, the court may not undertake to evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes; so long as the evidence in the record is such that a reasonable jury drawing all inferences in favor of the nonmoving party could arrive at a verdict in that party's favor, the court must deny the motion.

*International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir.1991).

## III.    Qualified Immunity

### A.  Standard for Qualified Immunity

Plaintiffs claim Eighth Amendment violations, and the Defendants assert qualified immunity. The two-part test for qualified immunity is well known: "the first step in the analysis is to consider whether, taking the facts as alleged in the light most favorable to Plaintiff[s],

Defendant[s'] conduct violated Plaintiff[s'] constitutional rights. Second, the district court looks to whether the rights allegedly violated were clearly established." *McCadney v. Hamilton*, No. 13-824, 2015 WL 2131350, at \*3 (M.D. La. May 6, 2015) (citing *Saucier v. Katz,* 533 U.S. 194, 201 (2001)). "Once Defendant[s] plead[] qualified immunity, the burden shifts to Plaintiff[s], who 'must rebut the defense by establishing that the official[s'] allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official[s'] conduct.' " *Id.* (quoting *Gates v. Tex. Dep't. of Protective and Regulatory Servs.,* 537 F.3d 404, 419 (5th Cir.2008)).

"The law is clear that a use of force is excessive and violates the Eighth Amendment of the United States Constitution if it is applied maliciously and sadistically for the very purpose of causing harm rather than in a good faith effort to maintain or restore discipline." *Id.* (citing *Wilkins v. Gaddy,* 559 U.S. 34, 37 (2010)). The law is also clearly established that "[a] prison official may not retaliate against or harass an inmate for complaining through proper channels about a guard's misconduct." *Morris v. Powell*, 449 F.3d 682, 684 (5th Cir. 2006) (citing *Woods v. Smith*, 60 F.3d 1161, 1164 (5th Cir.1995)).

### B. Defendants' Evidence

Defendants submit their own affidavits and ones from other guards. While these affidavits were silent as to the December 2012 incident, each affiant stated that no excessive force was used in the October 28, 2012, episode.

Defendant Landry attested that, on October 28, 2012, at approximately 2:30 p.m., he responded to a disturbance on C-tier, cell #8. (Doc. 96-7 at 1.) At that time, Plaintiffs, who were cell mates, appeared to be in a simple fight. (*Id.* at 2.) When Landry saw this, he activated his beeper, restrained Esteve, and placed him on the tier without any confrontation or struggle. (*Id.*).

4

Landry then restrained Kleinpeter and placed him on the tier.  Landry averred in his affidavit that at no time was force used by him or by any other officer present after the fight was stopped and compliance was gained. (*Id.*).  Landry further stated that at no time did he use excessive force on the Plaintiffs. (*Id.*)

Defendants Kilbourne and Jackson testified that they responded to a beeper at the above date, time, and place. (Docs. 96-8 at 2, 96-9 at 2.)  Both saw the Plaintiffs in a fight. (Docs. 96-8 at 2, 96-9 at 2.)  Kilbourne assisted Landry in restraining Esteve but did not touch Kleinpeter. (Doc. 96-8 at 2.)  Jackson assisted in restraining Kleinpeter but did not touch Esteve. (Doc. 96-9 at 2.)  Just like Landry, Kilbourne and Jackson swore in their affidavits that they did not use force after the fight was stopped and compliance was gained and that at no time did they use excessive force. (Docs. 96-8 at 2, 96-9 at 2).

Defendant Norswothy declared that, at that date and time, he responded to a beeper that was activated at that location. (Doc. 96-6 at 2.)  When he arrived, both Plaintiffs were already restrained and on their knees. (*Id.*)   Norsworthy echoed the other officers: (1) "[a]t no time forced used by [him] or any other officers present after the fight was stopped and compliance was gained" and (2) "[a]t no time did [he] observe any use of excessive force on [Plaintiffs] in my present [sic] on 10/28/12." (*Id.*)

Defendants provide other witnesses, such as Michael Allen and James Weasley, who responded to the beeper. (*See* Docs. 96-10, 96-11.)  Each claimed that at no time did they observe any use of excessive force on the Plaintiffs on the day of this incident. (*See* Docs. 96-10, 96-11.)

Defendants also submit the medical records of the Plaintiffs, along with the affidavit of Robert Lyle Cleveland, M.D., who stated that he reviewed Plaintiffs' claims and the underlying

ARPs.  (Doc. 96-13 at 3, 6.)  In short, Cleveland claimed that the "objective findings [of the medical records] do not support the allegations" of the Plaintiffs. (*Id.* at 3, 6). Defendants do not, however, provide any citations to the medical records themselves.

### C.  Plaintiffs' Evidence

Plaintiffs' witnesses presented a different account of what happened.  Al'Danile Washington declared that "[i]t started out with Sgt. Kilborn [sic] harassing Kleinpeter on Cell Block B on C-tier.  Sgt. Kilbourn [sic] persuaded Sgt. Andyelle into harassing Kleinpeter as well." (Doc. 97-5 at 2.)  Andyelle came down the tier with another, who had a cup of water in his hands. (*Id.*)  Kilbourne, Jackson, and Andyelle ran into the cell and began attacking Kleinpeter and Esteve. (*Id.*)  Washington said he could "clearly hear the officers punching [and] kicking Mr. Kleinpeter and Wade [Esteve]." (*Id.*)  Kilbourne then grabbed Kleinpeter and threw him in the hall. (*Id.* at 3.)  Jackson grabbed Esteve and did the same. (*Id.*).  Kilbourne punched Esteve on the side of the face and in the side and also punched Kleinpeter. (*Id.*)  Kleinpeter allegedly threw up and said, "I have stomach cancer. Why are you kicking me in the stomach?" (*Id.*)  "At this time Major Moore [and] the Lt. Norsworthy come[] on the tier." (*Id.*)  Kilbourne allegedly held Kleinpeter down in his own vomit.  Major Moore then told Kilbourne to take Plaintiffs to the shower. (*Id.*)  Moore asked Andyelle what happened, and Andyelle said that Kleinpeter threw something at him. (*Id.*)  Washington testified that Norsworthy did not see any of the incident. (*Id.*)

Plaintiffs also submit the declaration of Plaintiff Wade Esteve, who attached and verified his administrative remedy procedure ("ARP"), or formal grievance. (Doc. 97-8.)  Esteve claimed that, on October 28, 2012, Andyelle approached his cell door and dropped a liquid in front and outside the bars of his cell. (*Id.* at 2.)  Andyelle then called for help, and Kilbourne, Jackson, and

6

Landry ran down the tier. (*Id.*). Kilbourne opened the door, and all four guards began beating the Plaintiffs. (*Id.*) Landry held Esteve's hands behind his back while Kilbourne punched him in the stomach, chest, and ribs. (*Id.*) Esteve was dropped to the ground and then kicked. (*Id.*) While this was happening, Andyelle and Jackson were punching and kicking Kleinpeter. (*Id.*) The guards then cuffed and shackled the Plaintiffs and brought them outside their cell. (*Id.*) Andyelle hit his beeper, and Norsworthy, Capt. Allen, and Major Moore ran to the scene. (*Id.*) The Plaintiffs were taken to the shower, and Andyelle said that Kleinpeter threw the liquid on him. (*Id.*). Esteve said, "[m]y face, my back, my ribs [and] my chest is hurt pretty bad [and] it hurts my chest to breathe." (*Id.* at 3.)

Plaintiffs also submit ARPs attached to declarations by John Pittman, Brandon Lee Lands, and Edward Wilson, all of whom discussed how Norsworthy subjected Kleinpeter to chemical agents on December 21, 2012, for no reason. (*See* Docs. 97-6, 97-7, and 97-9.) These prisoners also declared that Norsworthy stated, "Come to the bars and get some more and don't forget to spell my name correctly when you write your next A.R.P." (*See* Docs. 97-6, 97-7, and 97-9.) Plaintiffs also submit the declaration of Durwin Lydell Abbot, and it also described an incident of Norsworthy spraying Kleinpeter. (Doc. 97-10 at 2.)

Plaintiffs produce no medical evidence of their own but point to excerpts from the medical records provided by Defendants. As to Esteve, Plaintiffs point to a Health Care Request Form dated October 28, 2012. (Doc. 96-14 at 2.) Esteve complained, "I was beat up by Security, I'm hurting really bad [and] I'm also dizzy!" (*Id.*) The health care provider wrote in the assessment/comment section, "small red marks present to upper forehead. No visible marks to chest. No swelling noted to chest. . . . no visible marks to back. No swelling noted. BBS clear." (*Id.*)

7

As to Kleinpeter, Plaintiffs direct the Court to another Health Care Request Form dated October 28, 2012. (Doc. 96-4 at 19.) In it, Kleinpeter complained, "I was jumped on really bad by the Sgs. I'm having problems breathing – my stomach hurt really bad. I was kicked in my privates [and] my rectum. I was kicked in my head. Please Help Me!" (*Id.*). In the assessment/comment section, the health care provider wrote, "Red abrasion to [R] temporal area. . . . bruise [L] lower back/hip area, abrasion to [left] rib cage . . . c/o pain to [L] testicle. Minimal swelling noted, pain to palpitation." (*Id.*).

### D. Discussion

#### 1. Claims against Kilbourne, Landry, and Jackson arising from the October 2012 incident

The Court denies Kilbourne, Landry, and Jackson's motion for summary judgment for Plaintiffs' claims arising from the October 2012 incident. In short, there are genuine issues of material fact that preclude summary judgment.

The Court is guided in its decision by *Granger v. Babin*, No. 12-628, 2014 WL 2197064 (M.D. La. May 27, 2014). There, the court denied summary judgment on an excessive force claim. *Id.* at *4. The *Granger* court concluded that the "evidence paints two vastly different pictures of the events that occurred" on the day of the incident. The court emphasized that it "looks at the evidence in the light most favorable to the non-moving party to determine whether there is a genuine issue of material fact." *Id.* Further, "the court will not make credibility determinations regarding conflicting evidence at the summary judgment stage, as that is the province of the jury." *Id.* (citation omitted). Looking at the evidence in the light most favorable to the plaintiff, the *Granger* court found that genuine issues of material fact existed and that granting summary judgment on the excessive force claim would be improper. *Id.* Similarly, the *Granger* court denied summary judgment on the issue of qualified immunity because "there

8

[were] critical differences between the evidence presented by the parties, with one side presenting evidence that the officers' actions were reasonable and justified, and the other side presenting evidence of an attack on the Plaintiff." *Id.* at \*5. Accordingly, there were issues of fact as to whether the Defendants' conduct was objectively reasonable under the circumstances. *Id.*

The same reasoning applies here with respect to the October 28, 2012, episode. The Court has been presented with two conflicting stories of what happened. The Plaintiffs have submitted declarations showing that, on October 28, 2012, Defendants Kilbourne, Landry, and Jackson, and Andyelle attacked the Plaintiffs without provocation. Defendants, on the other hand, have submitted evidence showing that Plaintiffs had a fight, that the Defendants broke the fight up, and that no excessive force was used.

The Court cannot make credibility calls between these two conflicting versions of events. Construing the facts in a light most favorable to the Plaintiffs, the Court finds that Plaintiffs have sustained their burden of proving a genuine issues of material fact exists as to this excessive force claim. Similarly, as in *Granger*, there are issues of fact as to whether the Defendants' conduct was objectively reasonable under clearly established law. Accordingly, summary judgment as to these Defendants is denied.

Defendants argue that the objective medical evidence did not support Plaintiffs' claims.[2] But, as Plaintiff demonstrates, there is some medical evidence supporting Plaintiffs' version of events. Esteve had "small red marks to upper forehead," (Doc. 96-14 at 2) and Kleinpeter had some bruises, abrasions, and swelling. (Doc. 96-4 at 19.) This is sufficient to create a genuine

---

[2] The Defendant does not appear to argue that the injuries are *de minimis*. Accordingly, the Court will not address this issue.

issue of fact; a reasonable juror could still conclude from these entries that the Plaintiffs were beaten as alleged.

In sum, issues of fact preclude summary judgment on the issue of excessive force. Defendants' motion to dismiss Plaintiffs' claims against Kilbourne, Landry, and Jackson is denied.

### 2. Claims against Norsworthy arising from the October 2012 incident

To the extent that the Plaintiffs make a claim against Norsworthy arising from the October 2012 occurrence (which is unclear), the Court grants the Defendants' motion. The Plaintiffs have simply not brought forward any summary judgment evidence demonstrating that Norworthy subjected them to excessive force in violation of the Eighth Amendment.

In fact, Plaintiffs' own evidence shows that Norsworthy was not involved in the incident. Al'Danile Washington explained in his declaration that the beating occurred "[b]efore the Lt. [Norsworthy] or Major [Moore] came on the tier . . ." (Doc. 97-5 at 2).  His story, told chronologically, does not mention Norsworthy coming on the scene until after the Plaintiffs have been removed from the cell and the beatings stopped. (*Id.*)  Washington even stated, "Lt. Norsworthy did not see any of the incident[.] Neither did Major Moore.  They can not [sic] in [a]ny way justify the situation.  Only thing they would be doing is covering up the situation." (*Id.* at 3.)

Esteve's declaration also exonerated Norsworthy.  Esteve wrote in his ARP that, after the beating occurred, Plaintiffs were "placed into the hall [and] put on [their knees[,] [and] Sgt. Kilbourne asked Sgt. Andyelle had he hit the beeper.  At this time Sgt. Andyelle hit his beeper [and] Lt. Norsworthy, Capt. Allen [and] Major Moore ran to the scene." (Doc. 97-8 at 2.)  Moore

then brought Esteve into an office to question him (*Id.*)  Esteve even said that the "beeper was not his until[] after the incident acoured [sic]."

Thus, to the extent Plaintiffs make such a claim against Norsworthy for the October 2012 incident, he is entitled to qualified immunity.  Defendants' motion is thus granted, and this claim is dismissed with prejudice.

### 3. Claims against Kilbourne, Landry, and Jackson arising from the December 2012 incident

The Court has reviewed the Plaintiff's First Amended Complaint for Damages to Correct Names of Defendants (Doc. 80), and the Plaintiffs do not appear to make claims against Defendants Kilbourne, Landry, and Jackson in connection with the December 2012 event.  Accordingly, Defendants' motion on this issue is denied as moot.

### 4. Claims against Norsworthy for the December 2012 incident

The Court denies Defendants' motion to dismiss these claims on the basis of qualified immunity.  As demonstrated above, the Plaintiffs have submitted sufficient summary judgment evidence, through the declarations of John Pittman, Brandon Lee Lands, Edward Wilson, and Durwin Lydell (Docs. 97-6, 97-7, 97-9, and 97-10), to create an issue of fact as to whether Norsworthy subjected Kleinpeter to excessive force and as to whether Norsworthy retaliated against him for filing an ARP.  Furthermore, construing the facts in a light most favorable to the Plaintiffs, Norsworthy's conduct was objectively unreasonable.  Accordingly, the Court denies Defendants' motion on this issue at this time.

### IV.   Exhaustion

At the outset, the Court notes that the Defendants appear to assert the exhaustion defense only with respect to claims against Norsworthy.  Having found that Norsworthy is entitled to qualified immunity for the October 2012 incident and having dismissed this claim with

prejudice, the Court will only focus its analysis on whether Kleinpeter exhausted his remedies against Norsworthy for the December 2012 incident.

### A.  Parties' Arguments

Defendants argue that Kleinpeter has not exhausted his administrative remedies on ARP DCI-2013-09, which was Kleinpeter's ARP for the December 2012 episode.  Defendants submit the affidavit of Cherryl Washington, an employee of the Louisiana Department of Public Safety and Corrections ("Department"). (Doc. 96-3.)  Her job duties include receiving, screening, and processing grievances in accordance with Department regulations. (Doc. 96-3 at 1-2.)

Washington detailed at length the exhaustion process for inmates such as Kleinpeter. (*See* Doc. 96-3.)  She also explained how "ARP rules allow for only one ARP request per inmate to be reviewed at the institutional and/or Department . . . level at a time." (Doc. 96-3 at 2.) Washington attested that ARP DCI-2013-09 was "logged and set aside due to . . . Kleinpeter having **Multiple Requests** pending during the review of previous request in accordance with the **Department Regulation No: B-05-005** and has not been exhausted at this time before filing this present lawsuit in federal court." (Doc. 96-3 at 6. (bold in original)) Additionally, Washington stated that Plaintiffs "made no attempts to cure the stated deficiencies in their administrative remedy relative to their claims asserted in these proceedings" and that "[t]hey have failed to follow well established institutional rules on filing an administrative grievance and failed to exhaust the [ARP] against . . . James Norsworthy before filing a lawsuit in federal court." (*Id.*) As a result, Defendants argue Norsworthy is entitled to summary judgment on this claim.

Plaintiffs respond that they have been prevented from exhausting administrative remedies against Norsworthy.  According to Plaintiffs, Cheryl Washington's affidavit made clear that Dixon refused to reactivate or consider ARP DCI-2013-09 even after it was no longer back

logged behind DCI-2012-911 (Kleinpeter's ARP for the October 2012 incident). Plaintiffs argue

that Defendants have not shown that the Warden was allowed to backlog an ARP on the basis of

"multiple claims" and then refuse to act upon it infinitum and even after it is no longer

backlogged. Plaintiffs contend that, under Fifth Circuit law, the exhaustion requirement may be

subject to certain defenses such as waiver, estoppel, or equitable tolling. Plaintiffs further claim

that the Fifth Circuit has recognized certain bases for excusing the exhaustion requirement.

Plaintiffs maintain that the prison did not follow its own rules with respect to backlogging and

processing of claims. Moreover, Plaintiffs claim that, although Cheryl Washington said that the

Plaintiffs did not cure "stated deficiencies," there is nothing in the record indicating what these

deficiencies were. Additionally, Kleinpeter could not proceed to a "Step Two" determination for

ARP DCI 2013-09 because he was not provided with the appropriate form. In sum, Plaintiffs

claim that the Norsworthy did not prove the affirmative defense of exhaustion.

### B.  Exhaustion of Prisoner Claims Generally

The Fifth Circuit has explained:

> According to 42 U.S.C. § 1997e(a): "No action shall be brought with respect to
> prison conditions under section 1983 of this title, or any other Federal law, by a
> prisoner confined in any jail, prison, or other correctional facility until such
> administrative remedies as are available are exhausted." The purposes of this
> exhaustion requirement are to "give an agency an opportunity to correct its own
> mistakes with respect to the programs it administers before it is haled into federal
> court" and to allow for claim resolution in proceedings before an agency because
> it is faster and more economical than litigation in federal court.

*Johnson v. Ford*, 261 F. App'x 752, 755 (5th Cir. 2008) (citations omitted). Moreover, this Court

has explained:

> Under 42 U.S.C. § 1997e(a), a prisoner must exhaust available administrative
> remedies before filing a § 1983 suit and is precluded from filing suit while the
> administrative complaint is pending. *Clifford v. Gibbs*, 298 F.3d 328, 332 (5th
> Cir.2002); *Underwood v. Wilson*, 151 F.3d 292, 296 (5th Cir.1998), *abrogated in*

*part by Jones v. Bock*, 549 U.S. 199, 127 S.Ct. 910 (2007) (abrogating the holding that a district court may dismiss a civil complaint *sua sponte* for failure to exhaust); *Wendell v. Asher*, 162 F.3d 887, 891 (5th Cir.1998); *Harris v. Hegmann*, 198 F.3d 153, 157 (5th Cir.1999). A prisoner must exhaust his administrative remedies by complying with applicable prison grievance procedures before filing a suit related to prison conditions. *Johnson v. Johnson*, 385 F.3d 503, 514 (5th Cir.2004). Not only must the prisoner exhaust all available remedies, but such exhaustion must be proper, including compliance with an agency's deadlines and other critical procedural rules. *Woodford v. Ngo*, 548 U.S. 81, 90, 126 S.Ct. 2378, 2386 (2006). Because § 1997e(a) expressly requires exhaustion, prisoners may not deliberately bypass the administrative process by flouting an agency's procedural rules. *Id.*, 126 S.Ct. at 2389–90. The § 1997e(a) exhaustion requirement is mandatory, irrespective of the forms of relief sought and offered through administrative avenues. *Days v. Johnson*, 332 F.3d 863, 866 (5th Cir.2003).

Under the Fifth Circuit's strict approach to the Prison Litigation Reform Act's exhaustion requirement, mere "substantial compliance" with administrative remedy procedures does not satisfy exhaustion. *See Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir.2001).

*Haynes v. Parker*, No. 13-818, 2015 WL 1258130, at *2-3 (M.D. La. Mar. 17, 2015).

Exhaustion under the PLRA is an affirmative defense. *Jones v. Bock*, 549 U.S. 199, 216, 127 S.

Ct. 910, 921, 166 L. Ed. 2d 798 (2007).

Finally, the Fifth Circuit has recognized that an inmate can be excused from the

exhaustion requirement under certain circumstances:

> In this Circuit, "a strict approach" is taken to the exhaustion requirement. *Days v. Johnson*, 322 F.3d 863, 866 (5th Cir.2003). . . . However, this Circuit has held that "the exhaustion requirement 'may be subject to certain defenses such as waiver, estoppel, or equitable tolling.' " *Days*, 322 F.3d at 866 (quoting *Wendell*, 162 F.3d at 890) (overruled by implication on other grounds by *Jones*, 127 S.Ct. at 920–21); *see also Wright v. Hollingsworth*, 260 F.3d 357, 358 n. 2 (5th Cir.2001). This Court has also held that a district court must afford a prisoner an opportunity to show that he has either exhausted the available administrative remedies or that he should be excused from this requirement. *Miller v. Stanmore*, 636 F.2d 986, 991 (5th Cir.1981). We have recognized, as a basis for excuse, circumstances where administrative remedies are inadequate because prison officials have ignored or interfered with a prisoner's pursuit of an administrative remedy. *Holloway v. Gunnell*, 685 F.2d 150, 154 (5th Cir.1982). Further, exhaustion requirements may be excused where dismissal would be inefficient and would not further the interests of justice or the purposes of the exhaustion

14

requirement. *Underwood v. Wilson*, 151 F.3d 292, 296 (5th Cir.1998) (overruled by implication on other grounds by *Jones*, 127 S.Ct. at 920–21*); see also e.g., Days*, 322 F.3d at 868 (where prisoner's broken hand prevented him from filling out and filing a timely grievance, failure to meet exhaustion requirement was excused).

*Johnson v. Ford*, 261 F. App'x 752, 755 (5th Cir. 2008).

### C. Louisiana's Grievance Scheme

This Court has previously explained:

The Louisiana administrative procedure consists of a two-step process, pursuant to which:

> [A]n offender may seek formal review of a complaint which relates to any aspect of his incarceration.... Such complaints and grievances include, but are not limited to any and all claims seeking monetary, injunctive, declaratory or any other form of relief authorized by law and by way of illustration, includes actions pertaining to conditions of confinement, personal injuries, medical malpractice, time computations, ... or challenges to rules, regulations, policies or statutes....

22 La. ADC, Part I, § 325(D)(1). An inmate is instructed to commence the process by submitting a written claim or a letter with the phrase, "this is a request for administrative remedy" or "ARP," 22 La. ADC, Part I, § 325(G)(1)(a)(i), and such claim must be filed within ninety (90) days of the incident giving rise to the claim. 22 La. ADC, Part I, §§ 325(G)(1) and 325(I)(1)(a)(ii)(I).

*Kelly v. Singh*, No. 14-64, 2014 WL 4660854, at *2 (M.D. La. Sept. 17, 2014),

Under Louisiana's regulations, an inmate must exhaust all administrative remedies before filing a grievance in federal or state court. La. Admin. Code tit. 22, § 325(F)(3)(a)(viii). Exhaustion occurs (a) when the relief requested has been granted; (b) when the second step response has been issued; or (c) when the grievance has been screened and rejected for one of the reasons specified in Subsection I [of §,325, entitled] Grievance Screening. *Id.*

Louisiana's grievance process consists of two-steps. La. Admin. Code tit. 22, § 325(J). Prison officials must respond to the inmate's written grievance at the first step within 40 days from the date the request is received. La. Admin. Code tit. 22, § 325(J)(1)(a)(ii).  If the inmate is

not satisfied with the decision rendered at the first step, he should pursue his grievance via the second step. La. Admin. Code tit. 22, § 325(J)(1)(a)(iii). If an inmate wishes to continue to the second step, "sufficient space will be allowed on the response to give a reason for requesting review at the next level. It is not necessary to rewrite the original letter of request as it will be available to all reviewers at each step of the process." La. Admin. Code tit. 22, § 325(J)(1)(a)(iv).

The second step is an appeal to the Secretary of the Department. La. Admin. Code tit. 22, § 325(J)(1)(b). The regulations further provide that an inmate proceeds to this step "by so indicating that he is not satisfied in the appropriate space on the response form and forwarding it to the ARP screening officer within five days of receipt of the decision" about the first step. *Id.* A final decision will be made on the second step "within 45 days from the date the request is received at the second step utilizing the second step response." La. Admin. Code tit. 22, § 325(J)(1)(b). If the inmate is not satisfied with the result of the second step, he may file suit in district court. La. Admin. Code tit. 22, § 325(J)(1)(b).

### D. Analysis

Defendants have met their burden of proving that Kleinpeter did not exhaust his administrative remedies for ARP DCI-13-09 before filing suit. Defendants submit Kleinpeter's ARP DCI-13-09, which was dated December 21, 2012, and which was stamped as having been received January 9, 2013. (Doc. 96-4 at 1.) Kleinpeter filed suit against Norsworthy for this incident on June 4, 2013. (See Doc. 1.) The affidavit of Cheryl Washington provided that, as of October 22, 2013, Kleinpeter's ARP DCI-13-09 had not been exhausted. (Doc. 96-3 at 6.) Thus, Defendants have shown that Kleinpeter did not exhaust his remedies when he filed suit on the December 2012 incident.

16

In response, the Plaintiffs maintain that Kleinpeter was prevented from pursuing his remedy because prison officials and the Department violated their own regulations governing exhaustion.  Plaintiffs' argument appears to center on three specific regulations.  The first involves backlogging when a prisoner has multiple ARPs pending.  The second relates to how long prison officials and the Department have to render a decision on the ARP at the first and second steps.  The third regulation deals with how the inmate proceeds to the second step.

In short, the Court disagrees with the Plaintiffs' analysis and finds that Kleinpeter has failed to exhaust his administrative remedies against Norsworthy.  The Court will address each of Plaintiffs' arguments in turn.

### 1. Backlogging of Claims

Plaintiff's first argument deals with the regulation governing the processing of multiple ARPs.  La. Admin. Code tit. 22, § 325(F)(3)(a)(ix) provides:

> If an offender submits multiple requests during the review of a previous request, they will be logged and set aside for handling at such time as the request currently in the system has been exhausted at the second step or until time limits to proceed from the first step to the second step have lapsed. The warden may determine whether a letter of instruction to the offender is in order.

According to Plaintiffs, Washington's affidavit showed that Dixon refused to take ARP DCI-2013-09 off of backlog even after DCI-2012-911 was processed, in violation of its own rules.

The Court is not persuaded by this argument.  The regulation clearly provides that ARP DCI-2013-09 could not proceed until Kleinpeter's other requests currently pending had "been exhausted at the second step or until time limits to proceed from the first step to the second step have lapse." *Id.*  Washington's overview of the ARP process confirms this.  (*See* Doc. 96-3 at 2 ("ARP rules allow for only one ARP request per inmate to be reviewed at the institutional and/or Department . . .  level at a time.")) Washington's affidavit stated that ARP DCI-2013-09 was

"logged and set aside due to . . . Kleinpeter having ***Multiple Requests*** pending during the review of previous request . . ." and that this ARP "has not been exhausted at this time [October 11, 2013,] before filing this present lawsuit in federal court." (*Id.* (bold in original, italics added))

Significantly, Washington did not say that Kleinpeter had "one other" ARP pending (i.e., ARP DCI-2012-911, the ARP involving the October 2012 incident); she said Kleinpeter had "*multiple requests*," as in more than one. Moreover, while Defendants attached to Washington's affidavit ARPs DCI-2012-911 and DCI-2013-09, Washington never stated that these are the *only* ARPs Kleinpeter had pending. Indeed, such an inference would be contrary to the express words of her affidavit.

In short, the Court finds that Washington's affidavit presents unrebutted testimony that Kleinpeter's ARP DCI-2013-09 was not processed because he had other ARPs pending. Plaintiff might have been able to create an issue of fact by submitting evidence that he had no other ARPs pending other than DCI-2012-911 and DCI-2013-09. In that event, there would arguably be a genuine issue as to whether the prison officials and Department were failing to comply with their regulations and preventing Kleinpeter from pursing his administrative remedies. Instead, Plaintiff has no brought forward no summary judgment evidence showing that the Defendant refused to process ARP DCI-2013-09 despite Kleinpeter having no other ARPs pending. Without such a showing, Kleinpeter's argument that Dixon prevented him from pursuing his remedy is unavailing.

### 2. Time to Render a Decision

Plaintiffs' second argument involves the amount of time the prison officials and Department had to render a decision on each step in the grievance procedure. La. Admin. Code tit. 22, § 325(J)(1)(c) provides:

Deadlines and Time Limits. No more than 90 days from the initiation to completion of the [two-step] process shall elapse, unless an extension has been granted. Absent such an extension, expiration of response time limits shall entitle the offender to move on to the next step in the process.

Plaintiff argues that more than 90 days have passed since the ARP was filed without a decision being rendered, so the Plaintiff was entitled to file suit.

The Court is again not persuaded. As stated above, prison officials must respond to an inmate's written grievance at the first step within 40 days from the day it was received. La. Admin. Code tit. 22, § 325(J)(1)(a)(ii). After the officials failed to do that, Kleinpeter was entitled under § 325(J)(1)(c) to "move on to the next step in the process" – that is, proceed to the second step. The regulations do not allow Kleinpeter to skip the second step entirely and file suit. Rather, Kleinpeter had to proceed to the second step with an appeal to the secretary.

Again, the Plaintiff was not prevented from processing his grievance; he chose not to take the next step in the process. This argument does not defeat Norsworthy's affirmative defense.

### 3. Second Step Form

Likely sensing this problem, the Plaintiffs make their third argument, which involves the manner in which a second-step appeal is taken. La. Admin. Code tit. 22, § 325(J)(1)(b) states:

An offender who is dissatisfied with the first step response may appeal to the secretary of the Department of Public Safety and Corrections by so indicating that he is not satisfied in the appropriate space on the response form and forwarding it to the ARP screening officer within five days of receipt of the decision.

Plaintiffs argue that, because Kleinpeter was never given a first step response form, Kleinpeter could not proceed to the second step.

The Court disagrees. Read in isolation, this regulation could arguably support Plaintiffs' argument. But this regulation must be read in the context of the others; La. Admin. Code tit. 22, § 325(J)(1)(c) clearly provides that "expiration of response time limits shall entitle the offender

19

to move on to the next step in the process." Plaintiffs' interpretation of § 325(J)(1)(b) would render § 325(J)(1)(c) meaningless; no inmate could ever proceed to the "next step" (i.e., the second step) if the time period for the first step process expired without decision because such a prisoner would lack the requisite form. It is hornbook that the Court must adopt an interpretation that gives meaning to all of the regulations and not one that renders one ineffective. Accordingly, the Court rejects the Plaintiffs' reading of this regulation.

### 4. Plaintiffs' Case Law

Plaintiffs cite to various cases holding that prison misconduct can defeat the exhaustion defense. The Court finds these cases distinguishable.

For instance, Plaintiffs cite to non-binding case law holding that administrative remedies are not "available" for an inmate to exhaust (and thus the inmate can file suit) if "prison authorities refuse or fail to give an inmate the appropriate grievance forms *despite his requests*." (Doc. 97. (citing *Aceves v. Swanson*, 75 F. App'x. 295, 296 (5th Cir. 2003) (emphasis added)) But here there is no evidence that Kleinpeter even requested the second-step forms.

Plaintiffs also heavily rely upon *Crawford v. Dretke*, No. CIV.A.C-04-335, 2007 WL 172628, at *6 (S.D. Tex. Jan. 11, 2007) *report and recommendation adopted*, No. 04-CV-335, 2007 WL 784343 (S.D. Tex. Mar. 12, 2007), which denied summary judgment on the exhaustion defense because an administrative remedy was not "available." But, in *Crawford*, the "plaintiff . . . submitted uncontroverted evidence that, while at the McConnell Unit, numerous grievances that he attempted to file were destroyed by defendants and not processed." *Id.* at *6. *Crawford* continued by describing the plaintiff's futile journey through the Texas grievance procedure:

> It was not until [plaintiff] was transferred off the McConnell Unit that he was able to file a Step 1 grievance, which he did in fact file. After it was returned unprocessed as untimely, he did not file a Step 2 appeal because there was decision to appeal. Moreover, [the Fifth Circuit has] indicate[d] that, pursuant to

[Texas Department of Criminal Justice] procedure, an inmate is not permitted to file a Step 2 grievance where the Step 1 grievance was returned unprocessed as untimely. That is, had plaintiff filed a Step 2 grievance, it would have been rejected. The ministerial act of filing an untimely grievance does not further any purpose of the exhaustion goal of notice.

*Id.*

The Court finds this case distinguishable as well.  As demonstrated above, there is no evidence of prison misconduct; that is, there is no evidence in the record that the prison refused to prosecute Kleinpeter's ARP despite there being no other claims pending.  Further, Kleinpeter's first step was not rejected as untimely, and there is no evidence that review at the second step would have been merely ministerial.  Thus, Plaintiffs' cases are unpersuasive.

### 5. Closing

In sum, Kleinpeter has not exhausted his administrative remedies against Norsworthy for December 2012 incident.  Moreover, as in *Johnson*, the Court finds here that there is no excuse for Kleinpeter's failure to exhaust his administrative remedies.  Plaintiffs have brought forward no evidence that prison officials have not ignored or interfered with Kleinpeter's pursuit of his ARP.  Further, dismissal here would not be inefficient and would further the interests of justice and the purposes of the exhaustion requirement.  Defendant's motion is granted, and this claim is dismissed without prejudice.

### V.      Official Capacity Suit

Finally, Defendant argues that claims against the Defendants in their official capacity should be dismissed.  The Plaintiff admits that the Defendants were not sued in their official capacity. (Doc. 97 at 1.)  Accordingly, this aspect of the Defendants' motion is denied as moot.

### VI.     Conclusion

Accordingly,

21

**IT IS ORDERED** that the Defendants' Motion for Summary Judgment (Doc. 96) filed by James Norsworthy, Tyrone Kilbourne, David Landry, and Kerrick Jackson is **GRANTED IN PART** and **DENIED IN PART**;

**IT IS FURTHER ORDERED** that Defendants' motion is granted in that the claims against Defendant James Norsworthy arising out of the October 28, 2012, incident are **DISMISSED WITH PREJUDICE**, as Norsworthy is entitled to qualified immunity;

**IT IS FURTHER ORDERED** that Defendants' motion is granted in that the claims against Defendant James Norsworthy arising out of the December 2012 episode are **DISMISSED WITHOUT PREJUDICE**, as Plaintiff Kleinpeter has not exhausted his administrative remedies, but **WITH PREJUDICE** for the purposes of proceeding *in forma pauperis* on this claim[3];

**IT IS FURTHER ORDERED** that, in all other respects, Defendants' motion is **DENIED**.

Signed in Baton Rouge, Louisiana, on <u>November 24, 2015</u>.


_____
**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[3] *See Kelly v. Singh*, No. 14-64, 2014 WL 4660854, at *3 (M.D. La. Sept. 17, 2014) (citing *Underwood v. Wilson*, 151 F.3d 292, 296 (5th Cir.1998)).